IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NANCY GARCIA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     Case No. CIV-13-792-M |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
|     Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ____). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings.

    I.    **Procedural Background**

Plaintiff filed her application for DIB on June 25, 2009, and she protectively filed her application for SSI on July 2, 2009. The Social Security Administration denied her applications initially and on reconsideration. Following a hearing, an Administrative Law

Judge (ALJ) issued an unfavorable decision. (TR. 55-64). The Appeals Council denied Plaintiff's request for review. (TR. 5-8). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir.2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

### III. The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§404.1520; 416.920. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 19, 2009. (TR. 57). At step two, the ALJ determined that Plaintiff has two severe impairments: degenerative disc disease and diabetes mellitus. (TR. 57). At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 60).

At the first phase of step four, the ALJ assessed Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR §§404.1567(a) and 416.967(a) limited by the inability to sit for no more than a total of 6 hours in an 8 hour day nor stand more than a total of 2 hours in an 8 hour day with the additional limitations of not being required to climb ladders, ropes or scaffolds or perform tasks requiring balancing and only occasional requirements to climb stairs or ramps, kneel, crouch, crawl or stoop.

(TR. 60). At the second phase of step four, the ALJ relied on the testimony of a vocational expert (VE) to determine the physical and mental demands of Plaintiff's past relevant work. (TR. 64, 86-87). At the third phase of step four, the ALJ relied on the testimony of the VE in determining that Plaintiff can perform her past relevant work as

secretary and attendance clerk "as actually and generally performed in the regional and national economy pursuant to the Dictionary of Occupational Titles." (TR. 64).

## IV. Issues Raised on Appeal

Plaintiff contends the ALJ failed to properly evaluate Plaintiff's "medical noncompliance." Plaintiff also challenges the ALJ's RFC assessment.

## V. Analysis

### A. The ALJ's Evaluation of Plaintiff's Medical Noncompliance

Plaintiff relies on *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987), *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993), and *Thompson v. Sullivan*, 987 F.2d 1483, 1490 (10th Cir. 1993) for the proposition that an ALJ must consider four specific issues before denying a claimant benefits because of failure to comply with medical treatment.

> In reviewing the impact of a claimant's failure to undertake treatment on a determination of disability, we consider four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.

*Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987) (internal quotations and citations omitted).

*Thompson*, 987 F.2d at 1490, extended the aforementioned requirement to credibility findings by specifically stating that these four factors must be considered "before the ALJ may rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility[.]"

4

But in *Qualls v. Apfel*, 206 F.3d 1368, 1372-73 (10th Cir. 2000), the Tenth Circuit Court of Appeals rejected a claimant's argument regarding the necessity of the ALJ to consider the four factors when determining credibility:

> [P]laintiff also argues that the ALJ could not consider his failure to take pain medication in the absence of evidence that plaintiff had been prescribed pain medication and that it would have restored his ability to work if he had taken it. Plaintiff's reliance on our opinion in *Frey* is misplaced, because *Frey* concerned the circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment. *Id.* at 517; *see also* 20 C.F.R. §404.1530; SSR 82–59, 1982 WL 31384 (S.S.A.). The ALJ here did not purport to deny plaintiff benefits on the ground he failed to follow prescribed treatment. Rather, the ALJ properly considered what attempts plaintiff made to relieve his pain—including whether he took pain medication—in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling. *See Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991); *Luna v. Bowen*, 834 F.2d 161, 165–66 (10th Cir. 1987).

Plaintiff contends that this Court should rely on the holding in *Thompson* rather than the holding in *Qualls*, even though *Qualls* is the more recent decision. In the alternative, Plaintiff contends that in the instant case, the distinction is irrelevant because the ALJ relied on Plaintiff's noncompliance to deny her applications for DIB and SSI and, therefore was required to apply the four-factor test in *Frey*.

Defendant takes the opposite position, contending that *Qualls* is the relevant decision because in the instant case, the ALJ considered Plaintiff's noncompliance solely to evaluate her credibility and not as a reason to deny her applications for DIB and SSI.

To the extent the ALJ used Plaintiff's noncompliance with prescribed treatments to evaluate her credibility, *Qualls*, the most recent of the published cases cited by Plaintiff, is the controlling law. But in the instant case, the purpose for which the ALJ actually used evidence of Plaintiff's noncompliance is unclear.

Throughout her unfavorable decision, the ALJ referred to Plaintiff's noncompliance with prescribed medical regimes, for both her back pain and her diabetes. The ALJ referenced a medical report from Dr. Warren G. Low, an orthopedic specialist at the McBride Bone and Joint Clinic. The report documents the "large herniated disk at L5-S1" and "severe degenerative disk disease a L5-S1 with neuroforaminal narrowing at L5-S1." (TR. 251). On follow-up Dr. Low stated that "treatment is probably going to be inevitable. She will probably need a discectomy at L5-S1." (TR. 249). This medical record also stated that Plaintiff "is fixing to lose her insurance at the end of the month." (TR. 249).

Before she purportedly began to consider Plaintiff's credibility, the ALJ described Plaintiff's severe back problems and referenced Plaintiff's noncompliance with recommended surgery:

> Examination dated June 3, 2009, included X-rays of her lumbar spine that showed severe degenerative disc disease with neuroforaminal narrowing at L5-S1. She experienced radiculopathy in her left leg.... A[n] MRI of her lumbar spine on June 13, 2009, showed a moderate to large broad based disc extrusion at L5-S1 and moderate narrowing of the right L5 neural foramen. Surgery was recommended[,] but she reported that she had no health insurance.

6

(TR. 58). What weight the ALJ gave to this evidence of "noncompliance" in determining Plaintiff's disability status is unclear. Arguably, the ALJ erred in failing to apply the four *Frey* factors to this evidence, including analysis of whether lack of insurance is a justifiable reason for Plaintiff's having declined surgery.

The question is further complicated by the ALJ's reliance on the same medical record, purportedly to discredit Plaintiff's allegations of disability. In doing so, the ALJ mischaracterized the statement that Plaintiff was "fixing to lose her insurance at the end of the month":

> [Plaintiff] reported that her insurance would expire at the end of the month as she had retired from her job and decided not to pick up COBRA.

(TR. 61). The ALJ cited Exhibit F2 as evidence that Plaintiff had "retired" and "decided to not pick up a COBRA policy." But Exhibit F2 is a report generated by Dr. Bruce G. Bell regarding Plaintiff's treatment for diabetes. It does not address Plaintiff's employment or uninsured status. (TR. 253). Moreover, the ALJ's mischaracterization of the circumstances responsible for Plaintiff's loss of insurance calls the ALJ's credibility analysis into question. The ALJ's statement implies that Plaintiff simply chose to quit her job with the Oklahoma Education Association and willfully rejected a COBRA policy. But this conclusion is belied by Plaintiff's testimony and statements repeated in the record:

> I resigned…. Because I was being absent a lot from work because of my illness. The last review that my manager did on me, evaluation, he told me that when I was there, I did a good job, but the main evaluation that he was doing for me was that I was absent a lot.

7

(TR. 86). Plaintiff's report to the consultative examiner was consistent with her testimony:

> [Plaintiff] had to stop working due to severe back pain[.] She had to resign due to inability to perform her job. She has MRI and x-rays of lower back and was told she has a bulging disk and multiple stenosis. It is impossible for her to sit, walk, or stand in one place for any long periods of time.

(TR. 262). There is evidence in the record that Plaintiff could not afford her medication or surgery. This evidence supports a conclusion that Plaintiff could not afford a COBRA policy.

It is undisputed that Plaintiff's alleged inability to work is caused primarily by the pain resulting from the documented impairments in her spine. But the ALJ frequently refers to Plaintiff's failure to comply with a diabetic diet and insulin therapy. (TR. 62). Plaintiff suffers from neuropathy and cellulitis stemming from high blood sugar levels. The ALJ stated that Plaintiff had been prescribed medications, but that she did not comply by taking the medications or following a diabetic diet:

> As to the location, duration, frequency, and intensity of claimant's pain or other symptoms, she stated that she experiences weakness and dizziness. She continues to treat the left foot wound and keeps her feet elevated.
>
> The claimant has been prescribed medications for the alleged impairments. However, as the notes from Good Shepherd and St. Anthony Hospital reflect, the claimant is noncompliant which results in complications that would be avoided if she would follow treatment regimen. Medical records reveal that the medications and dietary plan, when

>followed, have been relatively effective in controlling the claimant's symptoms.

(TR. 63).

The ALJ appears to use evidence of Plaintiff's noncompliance with her diabetic medication and diet as a reason to deny benefits. But no matter how the ALJ used the information from Good Shepherd and St. Anthony's hospital, her conclusion regarding the effectiveness of treatment in controlling Plaintiff's symptoms, is unsupported by evidence in the medical records she cites. The records from Good Shepherd show an office visit with PA Dan O'Donoghue on November 9, 2010, lab test results, and notes of a follow-up visit on December 7, 2010. (TR. 304-308). These documents do not contain any mention regarding the efficacy of compliance with diet and medications. The medical records from St. Anthony Hospital record the history of her emergency room treatment and brief hospital stay after she developed left foot cellulitis with staphylococcus aureus. She was also diagnosed with neuropathic diabetic foot ulcer with possible early gangrene, uncontrolled type 2 diabetes, acute blood loss anemia with iron deficiency anemia, gastroesophageal reflux disease, diabetic neuropathy, lumbar stenosis hyperlipidemia and osteoarthritis. (TR. 339). The rest of the records document her three-day stay in St. Anthony Hospital. A wound consultant stated that Plaintiff's diabetic neuropathy was profound. Plaintiff underwent "sharp excisional debridement" on October 11, 2011. (TR. 255). The consultant emphasized Plaintiff's need for good diabetic control to aid in the healing of her foot wound. (TR. 356). Nowhere in these medical records is there any mention that "the medications and

dietary plan, when followed, have been relatively effective in controlling the claimant's symptoms."

On remand the ALJ will have the opportunity to clearly set forth the evidence supporting her decision and clearly state the purpose for which the evidence is used. As currently written, the ALJ's credibility assessment is not supported by substantial evidence in the record.

### B. The ALJ's RFC Assessment

The ALJ's flawed credibility assessment affects the validity of her RFC determination. On remand, the ALJ will necessarily have to reconsider Plaintiff's RFC after she clearly identifies the purpose for which the evidence upon which she relies is being used. This Court need not consider Plaintiff's second ground for reversal.

### RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED AND REMANDED** for further proceedings consistent with this Report and Recommendation.

### NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **January 27, 2015**.

The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on January 13, 2015.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE